G. W. PICKETT, Respondent, v. RUBEN McCORD *et al.*, Defendants, W. A. EDMONSTON, Appellant; also, W. A. EDMONSTON, Appellant, v. G. W. PICKETT, Respondent.

St. Louis Court of Appeals, May 14, 1895.

1. **Agister's Statutory Lien for the Feed of Horses:** PRIORITY OVER ANTECEDENT CHATTEL MORTGAGE. If, after a chattel mortgage on horses has been duly executed and recorded, the mortgagor places the horses in a livery stable, the statutory lien of the keeper of such stable for feed for the horses will not take precedence of the mortgage, unless the mortgagee acquiesced in the agistment; and especially is this so, when, as in this case, the mortgage expressly prohibits the sale of the horses by the mortgagor.

2. **Replevin**: ENFORCEMENT OF AGISTER'S LIEN ON PROPERTY REPLEVIED. The claim of the livery stable keeper to priority over the mortgagee may be tried and adjusted in an action of replevin brought by the latter against the former for the horses; for the judgment in an action of replevin should be so framed as to meet and satisfy the equities of the parties in the property in controversy.

3. ———: ———: DISMISSAL OF ACTION IN JUSTICE'S COURT OWING TO PENDENCY OF A PRIOR ACTION. Accordingly, if, after the institution of the action of replevin, the livery stable keeper institutes an action before a justice of the peace for the enforcement of his statutory lien, such action may be dismissed on motion of the mortgagee, on the ground that a prior action is pending between the parties involving the same subject-matter.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED IN PART AND DISMISSED IN PART (BOND, J., *dissenting*).

*Edmonston & Cullen* for appellant.

Plaintiff's mortgage was prior in point of time. It is a universal principle and well settled that a prior lien gives a prior claim which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective or be displaced by some act of the party holding it. Even if the legislature should pass a law attempting to change this fundamental rule, it would be an encroachment upon the fundamental rights of property and should be promptly declared unconstitutional. *Rankin v. Scott*, 12 Wheat. 177; *Wycoff v. Hotel Co.*, 24 Mo. App. 390; *Sargant v. Usher*, 55 N. H. 287; *Loan Association v. Topeka*, 20 Wall. 655; *Mo. Clay Works v. Ellison*, 30 Mo. App. 75; *Meyer v. Berlandi*, 39 Minn. 438; *Wright v. Sherman*, 52 N. W. Rep. 1093. It is true, some of our courts hold that an artisan or tradesman who performs labor or makes repairs or improvements upon an article in his possession has a lien upon the article, superior

to a prior chattel mortgage, but these decisions are based upon the theory that the party claiming the lien has imparted new and additional value to the article sought to be· charged, or that the circumstances were such that the consent of the mortgagee might be inferred. Repairs by an artisan or tradesman require skilled labor, which ·is to be presumed will not be performed by the ordinary owners. No such reasons exist in a case where animals are fed. *Grinnell v. Cook*, 3 Hill, 485; *Bevan v. Waters*, 3 Car. & P. 520; *Judson v. Ethridge*, 1 Cromp. & M. 743; *Jackson v. Cummings*, 5 Mees & W. 342; *Miller v. Marston*, 35 Maine, 153; *Lewis v. Tyler*, 23 Cal. 364; *Jackson v. Kasseall*, 30 Hun, 231; *Scarff v. Morgan*, 4 Mees & W. 270; *Wells v. Barrister*, 36 Vt. 220; *Cummings v. Harris*, 3 Vt. 244; 13 Am. and Eng. Encyclopedia of Law, p. 943. While the courts of this state have never passed directly upon this issue, they have passed on issues very similar and the trend is unquestionably toward the position contended for by appellants. *Vette v. Leonori*, 42 Mo. App. 217; *Wycoff v. Southern Hotel*, 24 Mo. App. 382; *Sherwood v. Neal*, 41 Mo. App. 416; *Kirtley v. Morris*, 43 Mo. App. 144; *McAdow v. Sturtevant*, 41 Mo. App. 230. Outside of our own state the great weight of authority is to the effect that the lien of an agister for the feeding and pasturing of stock, received from the mortgagor in possession, is subject to the lien of a chattel mortgage upon the same stock given and recorded prior to the feeding and pasturage. The following authorities are directly in point. Many of the opinions cited are rendered under statutes practically similar to our statute. 1 Jones on Liens, p. 691; Jones on Chattel Mortgages [3 Ed.], sec. 472; 13 Am. and Eng. Encyclopedia of Law, 954, 956, 957; 37 Cent. Law Jour. p. 375; *Sargant v. Usher*, 55 N. H. 287; *Jacob v. Knapp*, 50 N. H. 71; *Wright v. Sherman*, 52

N. W. Rep. 1093; *Howes v. Newcomb*, 15 N. E. Rep. 123; *Storms v. Smith*, 137. Mass. 201; *State Bank v. Lowe*, 22 Neb. 68; *Hale v. Wigdon*, 20 Neb. 83; *Easter v. Goyne*, 51 Ark. 222; *Scott v. Scott*, 68 Tex. 1302; *Domnan v. Green*, 19 S. W. Rep. 909; *McGhee v. Edwards*, 11 S. W. Rep. 316; *Charles v. Neiglison*, 15 Bradw. 17; *Hauch v. Ripley*, 127 Ind. 151; *Reynolds v. Case*, 26 N. W. Rep. 838; *Jackson v. Kasseall*, 30 Hun, 231; *Bissell v. Pierce*, 28 N. Y. 252; *Lowe v. Woods*, 34 Pac. Rep. 959; *Small v. Robinson*, 69 Me. 425; *Hullingsworth v. Dowe*, 19 Pick. 228; *Robinson v. Baker*, 5 Cush. 137; *Ingalls v. Vance*, 18 Atl. Rep. 452; *Ingalls v. Green*, 20 Atl. Rep. 196; *Salters v. Everett*, 20 Wend. 267.

*W. W. Fry* for respondent.

BIGGS, J.—On the twenty-ninth day of August, 1893, Edmonston, the appellant, sold to McCord, the defendant, two horses. To secure the purchase money, McCord gave a chattel mortgage on the horses, in which it was stipulated that he should remain in possession of them until condition broken, and it was also stipulated that he should not sell, or attempt to sell, the horses, until the debt was paid. The mortgage was duly recorded on the day following its execution. A short time afterward McCord put the horses in the livery stable of G. W. Pickett, the respondent. Default was made by McCord in the payment of the first installment of the debt, which became due about the middle of October following, and Edmonston demanded possession of the horses from Pickett, who refused to give them up, unless his charges for feeding them were paid. Thereupon, to wit, on the nineteenth day of October, Edmonston instituted a suit in replevin for the possession of the horses against Pickett. The action was commenced without bond before a justice of the

peace, where it was tried on October 30. It appears from the transcript of the judgment of the justice that Pickett interposed, as a defense to the action, his claim for the feed, which was allowed by the justice to the amount of $75. The amount allowed was declared a lien on the horses, but no order was made enforcing it, and Pickett was allowed to retain the possesion of the animals. Edmonston took an appeal to the circuit court. Subsequently, to wit, on November 7, Pickett instituted an action against McCord before a justice of the peace to enforce his alleged lien for feeding the horses. On his own application Edmonston was made a party to that action. He claimed to own the horses, and denied the right of Pickett to a lien. He also moved to dismiss the action for the reason that the same subject-matter was involved in the replevin suit which was then pending in the circuit court. The justice overruled the motion and rendered judgment in favor of Pickett for $87, and declared the amount a lien on the horses, and they were ordered to be sold. From that judgment Edmonston also appealed. In the circuit court Edmonston renewed his motion to dismiss the action for the enforcement of the lien, which the court overruled. He excepted to the ruling of the court and still excepts. By agreement, both cases were tried together before the court. The issues in both cases were found in favor of Pickett, and judgments entered accordingly. In the suit to enforce the lien the court allowed $75, and ordered the sale of the horses to pay that amount and the costs of suit. In the replevin suit the judgment was simply that Edmonston was not entitled to the possession of the horses as against Pickett. From both judgments Edmonston has appealed. Both cases are here under one record.

The institution of the suit for the enforcement of the agister's lien was unnecessary, and it ought to have

been dismissed. McCord had defaulted in the payment of the mortgage debt, and, previous to the institution of either suit, he had surrendered all claim to the horses, and had so notified both Pickett and Edmonston. In defending against the replevin suit before the justice, Pickett, as he had the right to do, interposed his claim for feeding the horses, which was sustained by the justice and declared to be a lien on the animals. Wherein was the necessity for the second suit? The right of Pickett to have his claim against the horses adjusted in the replevin suit is well established by a long line of decisions, commencing with *Dilworth v. McKelvy*, 30 Mo. 149. The purport of the decisions is that, in such suits, the judgments should be so framed as to meet and satisfy the equities of the parties which appertain to the property in controversy. Following this line of decisions, we ruled in the case of *Wright v. Broome*,* decided at this term of the court, that a claim by defendant for the feed of the animals in controversy could be tried and adjusted in a replevin suit. Our conclusion is that the circuit court committed error in overruling the motion to dismiss the action enforcing the lien, and consequently the judgment therein must be reversed.

As the judgment in the replevin suit was but the result of the conclusion reached in the suit to enforce the agister's lien, and, as the reversal of the judgment in the latter case leaves the rights of the parties undetermined, the judgment in the replevin suit must also be reversed and the cause remanded for further trial. On such retrial the question will be as to the relative priority of the lien of the mortgage in favor of Edmonston and that in favor of Pickett for feeding the horses. We deem it proper to indicate our views on that subject.

Our statute, which gives a lien for the feed or

---

* The opinion in this cause has not been published, a rehearing having been granted.

board of horses, provides that "every person who shall keep, board or train any horse * * * shall, for the amount due, therefor, have a lien on such animal, * * * coming into his possession, * * * and no owner or claimant shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on payment of such debt." Revised Statutes, 1889, sec. 6730.

As the common law, in the absence of a special agreement, affords no lien for the feed of horses (*Miller v. Marston*, 35 Me. 153; *Lewis v. Tyler*, 23 Cal. 364; *Grinnell v. Cook*, 3 Hill (N. Y.), 485; *Wills v. Barrister*, 36 Vt. 220), the most of the states have statutes similar to our own. Controversies like we have here have arisen, and, in construing and applying the various statutes, different conclusions have been reached. *Sargent v. Usher*, 55 N. H. 287; *Smith v. Stevens*, 36 Minn. 303; *Hanch v. Ripley* 127 Ind. 151. The proper rule of construction, we think, is to give the lien of the prior mortgage the preference, unless a contrary construction is unavoidable. 1 Jones on Liens, sec. 691. Especially ought this rule to prevail, where the mortgage itself forbids the sale of the mortgaged property by the mortgagor; for it would be an anomalous proposition to hold that the mortgagor may pledge the animals for their feed and yet have no right to sell them. The language of our statute is not such as to require a construction which would abrogate such a contract, thereby violating fundamental rights of property. In such a case there are no equities in favor of the agister. The mortgage is on record, and he is presumed to have knowledge of its terms, and it is his own folly if he furnishes feed or pasturage for the mortgaged stock without first consulting the mortgagee. Therefore, in the present case, the judgment on a retrial should be for Edmonston, unless it appears

that he acquiesced in the agistment, and the burden of showing this is on Pickett. To this we may also add that a careful examination of the evidence preserved in the present record fails to disclose any substantial evidence of that fact.

The judgment in the case of Pickett against McCord will be reversed and the action dismissed; and the judgment in the case of Edmonston against Pickett will also be reversed, but the cause will be remanded for retrial in conformity with this opinion. Judge ROMBAUER concurs. Judge BOND dissents.